[Crim. No. 2545. Second Appellate District, Division One.—August 31, 1934.]

THE PEOPLE, Respondent, v. VERNE SCHUNKE, Appellant.

Monta W. Shirley and Glen A. Lane for Appellant.

U. S. Webb, Attorney-General, and William F. Cleary, Deputy Attorney-General, for Respondent.

HOUSER, J.—From a judgment which was rendered against him pursuant to his conviction of each of the crimes of robbery and of burglary, as well as from an order by which his motion for a new trial was denied, defendant has appealed to this court.

No question is raised by appellant regarding the sufficiency of the evidence to sustain the judgment. But since his defense to the charges upon which he was tried consisted in an unsuccessful attempt on his part to estab-

lish an "alibi", in that at the time when the offenses were committed he was at a place remote from the scene of the crime, to wit: many miles therefrom and at the home of his sister and her husband, appellant complains of the ruling made by the trial court "of its own motion", by which, in an offered explanation by defendant of the absence of his sister and her husband from the trial of the action, testimony that was given by the mother of appellant, in substance that the sister of appellant was sick and her husband was working, was stricken from the record as "incompetent, irrelevant and immaterial", and thereby withdrawn from the consideration of the jury.

Particularly in view of the fact concerning the family relationship that existed between defendant and the absent witnesses, and the presumed availability of the testimony of the latter in behalf of defendant, not only the applicability of the statutory inference (subd. 5, sec. 1963, Code Civ. Proc.) that if produced the testimony that might have been given by such witnesses would have been adverse to the asserted defense of "alibi" became apparent, but as well the situation thus presented assumed greater magnitude and importance as it affected and related to such "defense". The substance of the pertinent testimony given by the mother of defendant, and which testimony, by order of the trial court, was stricken from the record, was that her daughter was "at home; . . . she is in a delicate condition and is not able to be up"; confined to her bed; attended by a physician; "it has been a week or so she has not been able to be up and around"; that her husband was a foreman in a tire shop and that "he is working".

It was not shown whether either of the absent witnesses had been served with a subpoena to appear at the trial; but manifestly that fact would be immaterial to the point here presented. The question is not whether their failure to appear constituted a legal justification therefor, but rather is whether the offered excuse for the absence of the witnesses was in anywise material as affording an offset to the presumption that, if produced, the testimony of such witnesses would have been adverse to defendant's claim of "alibi". In other words, was the testimony that the sister of defendant was "in a delicate condition; . . . not able to be up," etc., and that her husband was "working",—such

evidence that the defendant had the right to have the jury consider it in determining what consequence or effect should attach to the fact that such witnesses were not produced, nor their testimony given in evidence,—all to the end of reaching a conclusion as to what credence should attach to the testimony given by defendant regarding his "alibi".

The importance to defendant of the proffered evidence cannot be overestimated. An alibi was his sole "defense" to the accusation made against him. He himself testified to his whereabouts at the time when the offense was committed; that is to say, that at such time he was in the presence of his sister and her husband, at their home, which was remote from the scene of the crime. Had the jury believed his testimony in that regard, his acquittal of the charge preferred against him necessarily would have followed. But in accord with the statutory provision to which reference hereinbefore has been had, the jury had the right to expect a corroboration of such statement by defendant from both his sister and her husband; and unless such witnesses were produced, in the absence of a satisfactory reason for their failure to be present, and to testify, the jury was at least authorized to assume that, if given, the testimony of such witnesses would not harmonize with that given by defendant. In other words, but going further, the presumption of even an unequivocal contradiction of the testimony given by defendant lawfully might have been indulged by the jury, with the possible result that the force of such presumption would outweigh or overcome the other positive evidence adduced in regard to the establishment of the asserted alibi. The "defense" of alibi is equally as legitimate and just as important and critical as any other so-called "defense" which may be made in a criminal action. Ofttimes it is "the only hope" upon which an accused person may rely to establish his innocence; and a defendant who seeks to avail himself of such "defense" should be as fully protected in all the incidental rights appertaining thereto as should any other defendant, whether in the same or another action, who may invoke any other defense to the accusation specified in the indictment or the information filed against him.

If instead of having been charged with the commission of a robbery or a burglary, defendant had been accused of the crime of manslaughter and his defense thereto had been

"self-defense", and for asserted reasons, identical with those presented herein for the absence from the trial of his "alibi" witnesses, defendant had failed to produce the only eye-witnesses to the altercation which resulted in the killing of the man for whose death defendant was on trial,—would it seriously be contended that a ruling made by the trial court by which was stricken from the record testimony to the effect that one of such witnesses was "at home; . . . in a delicate condition; . . . not able to be up; confined to her bed; attended by a physician; . . . ", etc., did not constitute serious error, prejudicial to the substantial rights of defendant?

Supposing that instead of having had two assumedly interested witnesses, defendant had had twenty wholly disinterested witnesses who were expected to testify in support of his "alibi"; and supposing that on the night preceding the day on which they were to give their testimony, at a house-party, which all such witnesses had attended, each of them was made quite ill from the effect of ptomaine poison, and by reason thereof on the succeeding day, when he was expected to testify on the trial of the action, was "at home; not able to be up; confined to his bed; attended by a physician", etc., and that on such succeeding day all such facts were testified by a lay witness; whereupon the court, "of its own motion", on the ground that such evidence was "incompetent, irrelevant and immaterial", ordered all such testimony stricken from the record;—is it possible that anyone would assert that in such circumstances the defense of defendant had sustained no substantial injury?

Nor is the point now made by respondent herein for the first time, that the proffered testimony was given by a lay witness, and not a physician, determinative of defendant's rights in the premises. In the first place, no objection of any sort was made to any of the pertinent questions propounded to the mother of defendant. Nor was any motion made to strike the evidence from the record. As hereinbefore has been indicated, that result was accomplished by the court "of its own motion" and for the stated reason that it was "incompetent, irrelevant and immaterial". For aught that appears, the mother may have been a well-known physician and fully qualified to give expert testimony relating to the physical condition of the sister of defendant. But giving no force to any such

possibility, at any rate, in the absence of objection to her qualifications, the testimony of the mother of the young woman that the latter was "in a delicate condition; . . . not able to be up; confined to her bed; attended by a physician"; etc., properly should be regarded at least as in accordance with appearances of the daughter and the observations made thereon by the mother. As far as concerns the "cold" record, the testimony given by the mother should have been regarded by the jury as established facts, and as such should have been carefully weighed in determining what credence should attach to the "alibi" claimed by defendant.

In the case of *People* v. *Clark,* 106 Cal. 32 [39 Pac. 53], wherein an analogous situation was present, the court said:

"Ah Wi was present at the time of the robbery, and was not present at the trial. It was competent to show where he was and why he was absent, as otherwise he should have been called as a witness."

Likewise in *State* v. *Remick,* 163 Wash. 326 [300 Pac. 1054], in the opinion of which the court, in part, commented as follows:

"Evidence explaining the absence of a material witness is admissible when failure to produce him would warrant an unfavorable inference against the party not producing him."

To the same effect are numerous authorities cited under section 392 of the title "Criminal Law" in each of the several decennial editions of Century Digest. But a case that in its facts is practically "on all-fours" with those in the instant case is *Melton* v. *State,* 110 Tex. Cr. Rep. 439 [10 S. W. (2d) 384]. It was there held not only that the ruling made by the trial court by which offered testimony similar in many respects to that herein eliminated from consideration by the jury was excluded, constituted error, but also that such error was so prejudicial to the substantial rights of the defendant that because thereof the judgment rendered against him should be reversed.

In the instant case, in addition to the prejudicial effect of the error of the trial court of which complaint is here made, in his argument to the jury the deputy district attorney in charge of the prosecution of the action commented upon the situation as follows:

"Thank God there are some honest people left in the world; these people did not come to court and you have a right to assume their testimony would have been adverse to the defendant, as long as they are not here."

It thus appears that the fact that the witnesses to whom reference hereinbefore has been had were not present at the trial of the action, together with the statutory presumption that had they been present and had they given their testimony it would have been adverse to the testimony that was given by defendant, were emphasized by the prosecution to the disadvantage and detriment of defendant.

Although it may be that, as presented, the evidence fairly showed that defendant was guilty of the commission of the offenses of which he was charged; and that even had the evidence that was stricken from the record been permitted to remain therein, the verdict of the jury would not have been different from that which was returned; nevertheless it is impossible for this court, with any degree of assurance, to accurately determine either the exact or the probable effect that such excluded evidence would have produced had it not been withdrawn from the consideration of the jury.

The judgment and the order by which defendant was denied his motion for a new trial are and each of them is reversed.

Conrey, P. J., concurred.

York, J., dissented.