[Crim. No. 4912.   First Dist., Div. Three.   Dec. 22, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. THOMAS A. STONE, Defendant and Appellant.

Richard E. Rader, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edward P. O'Brien and Jennifer L. Bain, Deputy Attorneys General, for Plaintiff and Respondent.

SALSMAN, J.—Appellant was convicted of robbery. On appeal he contends (1) that a statement he made to a police officer was received in evidence contrary to the rule expressed in *Escobedo* v. *Illinois,* 378 U.S. 478 [84 S.Ct. 1758, 12 L.Ed.2d 977], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal. Rptr. 169, 398 P.2d 361]; (2) evidence obtained by illegal search and seizure was used at his trial; (3) his impeachment by proof of a prior felony conviction denied him due process of law; (4) the district attorney and trial judge were guilty of prejudicial misconduct, and (5) that the trial court erred in its ruling on the admission and exclusion of evidence. We reject all of these charges of error, and therefore affirm the judgment.

On April 4, 1964, two men, one a Negro and the other a white man, robbed the Kinney Shoe Store in Belmont. The assistant manager of the store, three clerks and the cashier were present during the robbery. The robbers pretended to purchase shoes, and upon presenting their purchases to the cashier, announced a robbery, departing with cash and two pairs of shoes. Later several of the store employees identified appellant from certain photos shown to them by the police. He was arrested in Los Angeles on April 13th. On April 14th, Officer Trenam of Belmont arrived in Los Angeles and took him into custody. The officer noticed that appellant was wearing shoes similar to those taken in the robbery and asked him where he had purchased them. Appellant replied that he had purchased them at a shoe store in Los Angeles. No other questions were asked. At trial, appellant testified that the shoes had been given to him on April 5th by a friend. On cross-examination, however, he admitted that he lied to the police officer when he stated that he had purchased the shoes at a shoe store in Los Angeles.

Appellant first contends that evidence of his reply to Officer Trenam's question should not have been received because at the time his answer was given he had not been told of his right to counsel and his right to remain silent, citing both *Escobedo* v. *Illinois, supra,* 378 U.S. 478 and *People* v. *Dorado, supra,* 62 Cal.2d 338. We cannot uphold this contention. It is true that several of the elements mentioned for the application of *Dorado* are present. Thus, appellant was in custody, suspicion had focused upon him, and there is no showing that he had been told of his right to counsel and his right to remain silent. But totally absent here is the element of interrogation, designed to elicit incriminating statements from appellant. When Officer Trenam first met appellant he had knowledge of the fact that shoes had been taken in the Kinney robbery, and noticed that appellant was wearing shoes of the color and style of those taken in the robbery. The only question asked concerned where appellant had purchased his shoes. When appellant gave his answer it was accepted without comment. The question itself was not accusatory in nature. In fact, it assumed that appellant had obtained his shoes lawfully, by purchase. Facts here present do not disclose any meaningful interrogation of appellant such as to render evidence of the officer's question and appellant's reply inadmissible in evidence. (See *United States* v. *Konigsberg,* 336 F.2d 844.)

Appellant also contends that the shoes he was wearing at the time of his arrest and which were later introduced in evidence were obtained by an illegal search and seizure. This contention may readily be dismissed. As we have seen, appellant was wearing the shoes in question, at the time he was given over to the custody of Officer Trenam. Upon being admitted to the San Mateo County Jail appellant was routinely searched. A part of the search included removal of his shoes. Examination of the shoes disclosed the Kinney trademark and stock number, which were identical to the trademark and stock number of the shoes taken from the Belmont store.

■ It is, of course, entirely reasonable to search prisoners upon their admission to jail, and indeed it would be most imprudent not to do so. One of the obvious necessities for such a search is to disclose the presence of any weapons in possession of the prisoner. ■ It is common knowledge, also, that weapons, especially knives, are often concealed in the shoes of prisoners. ■ Thus appellant's search, including the requirement that he remove his shoes, violated none of his constitutional rights. Moreover, appellant's shoes were in plain sight, and their resemblance to shoes taken in the robbery had already occurred to Officer Trenam. Observing that which is in plain sight is not a search. (*People* v. *Martin,* 45 Cal.2d 755 [290 P.2d 855]; *People* v. *Walker,* 203 Cal.App.2d 552 [21 Cal.Rptr. 692].) ■ Nor was the seizure of the shoes a violation of any right of appellant. On facts here present the officer had reasonable cause to believe that the shoes were those taken in the robbery. Since the shoes were later definitely established to be contraband, appellant had no property right in them, and their seizure in no way infringed upon his rights under the Fourth Amendment to the United States Constitution.

■ Appellant testified in his own behalf. During examination by his own counsel he willingly admitted a prior conviction for bank robbery, and that he had served a term in prison for this offense. He admits that this course of action was deliberately chosen by him because of the existence of certain rules of law which he says compelled the choice. He argues that, if he had not taken the witness stand, the prosecutor would have been permitted to comment upon his failure to testify.[1] To avoid this, as well as a possible instruction

---

[1]Appellant's case was tried before the decision of the United States Supreme Court in *Griffin* v. *California,* 380 U.S. 609 [85 S.Ct. 1229, 14 L.E.2d 106].

from the court to the jury concerning inferences that might reasonably be drawn from his failure to testify, he says that he was compelled to take the witness stand and subject himself to impeachment, thus revealing his prior felony conviction. This, it is urged, violates his constitutional rights in that he was compelled to be a witness against himself. We disagree.

Code of Civil Procedure section 2051 allows any witness to be impeached by a showing that the witness has previously been convicted of a felony. This manner of impeachment has been approved in many cases. (*People* v. *Pike*, 58 Cal.2d 70, 94 [22 Cal.Rptr. 664, 372 P.2d 656]; *People* v. *Terry*, 57 Cal.2d 538 [21 Cal.Rptr. 185, 370 P.2d 985].) █ The privilege against self-incrimination may be waived and is generally considered to be waived when, as here, a defendant has voluntarily taken the witness stand and offered testimony in his own behalf. (*People* v. *DeGeorgio*, 185 Cal.App.2d 413, 421 [8 Cal.Rptr. 295].) █ Although appellant now contends that he testified only because of the possibility of comment by the prosecutor if he did not, and a possible jury instruction thereafter, we may look to the record to see if there is some other and perhaps more persuasive reason calling for his testimony. We find it clearly present in the trial transcript. Appellant had been identified as one of the robbers by at least three of the persons present in the store at the time of the robbery. When taken into custody by Officer Trenam appellant was in possession of a part of the property taken in the robbery of the Kinney store. This testimony was of great probative effect. It obviously demanded some explanation. It was undoubtedly the coercive effect of this testimony rather than the possibility of some comment from the prosecutor that compelled appellant to assume the role of witness in the trial. Appellant's constitutional right was to remain silent, but that right does not operate to shield him from the force of the evidence arrayed against him, or protect him from the compulsion it generates. (See *State* v. *Garvin*, 44 N.J. 268 [208 A.2d 402, 408].) Thus, when appellant chose to become a witness, he was subject to impeachment in the same way and to the same extent, as any other witness.

█ Appellant also charges that the trial court erred in its rulings on the admission and exclusion of evidence. Appellant first says his cross-examination of a prosecution witness was unduly restricted by the trial judge. At trial, a Mr. Gurney, a clerk in the Kinney store, present at the time of

the robbery, testified and identified appellant as one of the robbers. On cross-examination the witness stated that he was about 15 feet away from appellant when he first observed him; that there was nothing unusual about his actions at that time, and that he appeared to be just another customer. The witness was then asked: "Now at that point, Mr. Gurney, had you been asked to identify the defendant at some subsequent date, would you have been able to identify him, do you think?" An objection to this question was sustained. This was not error. The trial judge has a wide discretion in the control and ultimate scope of cross-examination of a witness, especially where, as here, the purpose of the inquiry is to test recollection, and although liberality and wide latitude is the usual standard, especially in criminal cases, we see no abuse of discretion here. Quite obviously the answer would have involved a large degree of speculation on the part of the witness. Moreover, at the point in time to which the inquiry was directed, appellant had engaged in no unusual conduct, at least none sufficient to produce any particular impression upon the witness. Later events, however, particularly appellant's advance to the cashier's stand, the production of a weapon, the announcement of a holdup, and his demand for money, were sufficiently impressive so as to permit the witness to fix appellant's image in his mind, and to make positive identification of appellant at trial.

After the robbery, the witness Gurney was shown certain photographs, one of which was identified by the witness as that of appellant. At trial Mr. Gurney testified as to his identification of appellant from the photographs, and was then asked, again on cross-examination, as to where a Mr. Parke, the assistant manager, was standing when the witness first identified appellant from the picture. An objection to this question was properly sustained. The question was irrelevant to any issue in the trial. The witness had previously testified that he was the first to identify appellant, and Mr. Parke's later testimony indicates that Mr. Gurney was not present when Mr. Parke made his identification.

Appellant's defense consisted of an alibi. He claimed to have witnesses to support his alibi, but they were not subpoenaed and did not appear. When appellant testified he was asked by his counsel: "Did any of the—did either of the two witnesses in question, Mr. Stone, indicate that they would be willing to come up here of their own free will?" An objection to this question on the ground of hearsay was

sustained. Appellant claims error. We see none. If the response to the question was intended to show that the alibi witnesses were unwilling to testify, and no other purpose was suggested to the trial court, then the question did call for an answer based upon hearsay, and the ruling of the trial court was entirely correct.

Appellant also attempts to argue that the trial court did not permit him adequate opportunity to explain the whereabouts of his alibi witnesses. The record refutes this charge. It is true, as appellant states, that he had a right to explain the absence of his witnesses. (*People* v. *Schunke,* 140 Cal. App. 544 [35 P.2d 388].) But he did explain their absence. He testified that one of his witnesses was in the hospital and the other was at work every day, saying: ''. . . They have to lay off from work and everything. . . .'' and ''. . . they just don't want to get involved.''

The trial judge told the jury, in effect, that appellant's witnesses were subject to subpoena at the expense of the county, and that if subpoenaed the witness would be required to attend. Appellant complains that the court's statement to the jury caused him prejudice. There was no error here. It is fundamental that a defendant in a criminal case has a right to the process of the court to compel the attendance of witnesses (Cal. Const., art. I, § 13; Pen. Code, §§ 1326, 1330) and that the expenses of such witnesses are county charges. (Pen. Code, § 1329.) Here the judge gave his instruction to the jury on this subject at the time the issue arose. This was entirely proper (Pen. Code, § 1093, subd. 6) and undoubtedly helpful to the jury, since questions concerning the absence of the alibi witnesses were immediately before them.

Appellant refers to various instances occurring during his trial and charges both the district attorney and the trial judge with misconduct. None of these charges has any substance. We need not discuss each of them in detail. To illustrate their lack of merit, however, we discuss one charge of misconduct against the district attorney and the charge made against the judge.

The district attorney is accused of misconduct in this setting: Officer Davis testified that he showed photographs to the witnesses Parke, Margosian and Gurney and that each made an identification by picking out a certain photograph. The witness was then asked who was the first, who was the second and who was the third to make the identification.

Unexpectedly the witness answered that a Miss White was the first to identify appellant. No objection to this reply was made by appellant's counsel but the district attorney promptly suggested that the jury be instructed to disregard the reply of the witness, since Miss White had not testified. The court followed the suggestion and gave an admonition to the jury, although the admonition was incomplete. It is apparent from the trial transcript that here, as in other instances of alleged misconduct, the district attorney was making no attempt to take advantage of appellant, or to do any act that might tend to deny him a fair trial.

The lack of substance in appellant's charges of misconduct is also illustrated by the circumstances surrounding the charge made against the trial judge. Appellant's counsel addressed this question to a witness: ". . . are you testifying that you don't remember or you are just guessing again. . . .?" The judge took issue with the form of the question, stating: "The Court does not appreciate your making allusion to the witness guessing again. There's nothing in the evidence. Your allusion and characterization is improper." Appellant attempts to show that the witness was in fact guessing, and that it was improper for the trial judge to thus rebuke counsel. He further contends that the admonition was prejudicial and impressed the jury with the trial judge's apparent belief in the testimony of the witness. These contentions lack merit. ▌ It is the duty of a trial judge to see that the trial is conducted in a fair and orderly manner and to that end he may reprove counsel for pressing questions upon a witness that are argumentative in nature or incorporate assumptions believed by the court to be untrue. Here it is evident the court believed that the witness to whom the question was addressed had not been guessing in his previous testimony. There was not the slightest castigation or abuse of counsel. Indeed, all that appears in the record is the mild admonition to the effect that counsel refrain from such comments in the examination of the witness, a comment patently within the inherent powers of a judge in the proper control of the proceedings before him.

Judgment affirmed. The appeal from the order denying motion for new trial is dismissed.

Draper, P. J., and Devine, J., concurred.