[Crim. Nos. 12191, 13366. Second Dist., Div. One. July 12, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JESS LAFAY-
ETTE BRONSON, Defendant and Appellant.

834

I. A. Kanarek, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In a jury trial. defendant was found guilty on two counts of violating section 288 of the Penal Code (lewd acts). Criminal proceedings were adjourned, proceedings were instituted pursuant to section 5501 of the Welfare and Institutions Code (mentally disordered sex offender), defendant's motion for a new trial was denied, and on January 25, 1966, he was committed to a state hospital for observation and diagnosis for a period not to exceed 90 days. On April 27, 1966, he was recommitted to the hospital for an indefinite time. He appealed (case No. 12191, herein) from the order committing him to a state hospital (and denying the motion for a new trial). On August 9, 1966, the superintendent of the hospital certified (Welf. & Inst. Code, §§ 5517, 5518) that defendant was not amenable to further treatment. Criminal proceedings were reinstated, and appellant was sentenced to state prison for the term prescribed by law on both counts. Defendant appealed (case No. 13366, herein) from the judgment and sentence.

Appellant contends that certain remarks of the judge, regarding appellant's attorney, constituted prejudicial misconduct. He also contends that the court erred: (1) in rulings as to admissibility of evidence; (2) in denying appellant an opportunity to locate a witness; (3) in denying appellant's motion for mistrial; (4) in giving, and refusing to give, certain instructions to the jury, and (5) in sentencing the appellant.

Patsy and Sandy, aged 9 and 12, respectively, lived in an apartment with their mother and Margaret Hollenbaugh.

On July 27, 1965, their mother was away from the apartment during the evening and did not return until 11:30 p.m.

Earlier in the evening, the defendant Bronson came to the apartment and asked Margaret to go with him to a certain bar to get some beer. When they were leaving the apartment, defendant asked Margaret whether the girls were going to be there by themselves. Defendant drove his car and Margaret followed him in her car. He drove past the bar, and she followed him past the bar for a few blocks and then returned and parked her car in front of the bar where she waited approximately 25 minutes. Then she went to the home of her friend Jim. She did not return to her home that night.

Patsy testified in substance that: When defendant was at the apartment, before he left with Margaret, he used the telephone and then offered $1.00 to Margaret for the use of the telephone, but she would not take it, and then he gave 50 cents to each of the two girls. After he returned to the apartment that evening, and while Patsy and Sandy were in the bedroom, he told Patsy that he wanted to whisper something to her. He told Sandy to look out the window and see whether her mother or Margaret was coming. Sandy left the room and then he started to put his hand on Patsy's hips and take her pants down. Then Patsy ran out of the room. Defendant told Sandy, who was in the living room, that he wanted to tell her a secret. Sandy went into the bedroom, and defendant told Patsy to look out the window and see whether anyone was coming. Defendant went into the bedroom. While they were in the bedroom, Patsy was in the living room. Sandy ran out of the bedroom, and defendant said: "Sandy, I wasn't going to hurt you." Defendant went into the living room and told Patsy that he wanted to tell her a big secret. They went into the bedroom and he turned the light off, pushed her onto the bed, took her pants down, and licked her body between her legs. He told her to promise that she would not tell her mother. They went into the living room and he asked the girls to promise that they would not tell their mother what he did to them if he left some money for them. He put some money on the couch and told the girls to tell their mother that he was sitting on the couch and that the money fell out of his pocket. Then he left the apartment.

Sandy testified in substance that when defendant returned to the apartment, after having gone from there with Margaret, he asked Patsy to go into the bedroom. They went into that room, and Sandy stayed in the living room. When they came out of the bedroom, he asked Sandy to go into the bedroom, and he said that he had a surprise for her. She went in

there with him, and he put his hand on her chest and moved his hand in a slow circular motion on the area of her breasts. He also touched her in the groin area with his hand. Then she ran out of the bedroom. He asked the girls to not tell their mother. He put some money on the couch and told the girls to tell their mother that some money fell out of his pocket. Then he left the apartment.

The mother of Sandy and Patsy testified in substance that: When she returned to her home about 11:30 p.m. on July 27, 1965, Sandy was watching television and Patsy was asleep on the couch. Sandy made a complaint about defendant, stating that he "had attacked them," and that the attack was a "sexual misconduct." Then she (mother) awakened Patsy, and Patsy made a complaint to her about sex misconduct of defendant. About 7:30 o'clock the next morning, after she (mother) had talked with her ex-husband by telephone, she made a report to the police.

Defendant testified in part as follows: He went to the apartment on July 27, 1965, a little after 10 p.m., to see Margaret. One of the girls there opened the door. He had been playing pool at a bar, and he went into the bathroom and washed chalk off his hands. He asked Margaret to call his friend Jim by telephone, and after she made a call and reported that Jim was not at home, he (defendant) offered to pay Margaret for the telephone charge. She would not take the money, and he gave 50 cents to each of the girls. He and Margaret agreed to go to a bar. She proceeded to go there in her car, and he went there in his car, but she was not there. He waited a few minutes, and then saw a man by the name of Jack, with whom he had been playing pool earlier that evening. Jack wanted to go to Hollywood, and defendant asked him to get into defendant's car. After traveling a short time, the defendant stopped his car, in a double-parked position, in front of Margaret's apartment. He went into the apartment, arriving there about 10:40 p.m., and Jack remained in the car. He asked whether Margaret had returned, and was told that she was not there. He went into the bathroom and washed more chalk off his hands. After talking to Jim by telephone about five minutes, he left his business card and said, "Have Margaret phone me." Then he left the apartment. He did not touch either of the girls. He was not on the bed with either girl.

■ Appellant contends that the court erred in receiving evidence of statements made by defendant while he was in the

custody of the police. He argues that evidence of the statements should have been excluded under rules in the *Escobedo, Dorado*, and *Miranda* cases, and that the court should not have permitted cross-examination of defendant, or rebuttal evidence by the People, relating to the statements. There was evidence that after defendant had been arrested, and before he made the statement, he was advised that he had a right to remain silent, a right to an attorney, and that any statement he made could be used against him in court; that defendant said he understood his rights; that he then made statements, freely and voluntarily, to the effect that after he left the apartment with Margaret, he did not return there, and did not see the girls again that night. The advice given to defendant was sufficient under the rules in the *Escobedo* and *Dorado* cases. Since the trial herein commenced in November 1965, prior to the *Miranda* decision (June 13, 1966), that decision is not to be applied retroactively. (See *People* v. *Rollins*, 65 Cal.2d 681, 691 [56 Cal.Rptr. 295, 423 P.2d 221].) Appellant's argument to the effect that the evidence relating to such statements of the defendant should have been presented as a part of the People's case in chief, and not on rebuttal, is not sustainable. The statements (re not returning to the apartment) were offered in rebuttal after defendant had testified that he did return to the apartment and did see the girls again that night. A proper foundation was laid for introduction of the statements.

Appellant further contends that the court erred in permitting Sandy and Patsy "to testify" in that they did not understand that "punishment might follow a failure to tell the truth." Children under 10 years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly, cannot be witnesses. (Code Civ. Proc., § 1880; see Pen. Code, § 1321.) In the present case, Sandy was 12 years of age when she testified (see *People* v. *Valenti*, 103 Cal.App. 249, 250-251 [284 P. 485].) Patsy, who was 9 years of age when she testified, said that she knew the difference between the truth and a lie, and that she would tell the truth. Whether they were competent to be witnesses was a matter within the discretion of the trial judge. (*People* v. *Trolinder*, 121 Cal. App.2d 819, 823 [264 P.2d 601] ; see *People* v. *Valenti, supra,* p. 251].) The court did not err in permitting them to testify.

Appellant also contends that defendant was deprived of an opportunity to present fully a defense that the com-

plaints of the victims were based on fantasy arising from "an aura of sexual immorality permeating the atmosphere under which the little girls were raised by their mother and the babysitter [Margaret]." He argues that the judge "adopted a negative attitude toward the propriety of the defense" and "restricted defense counsel's attempts [when examining and cross-examining witness] to explore the subject fully and completely." Appellant does not specify, in his brief, what proposed evidence of asserted sexual immorality was excluded. Defense counsel asked general questions as to whether men visited the apartment. The judge said, in effect, on several occasions that an offer of proof relative to acts of sexual intimacy would be accepted, but that evidence merely as to observations that men visited the apartment was irrelevant. The judge indicated that defense counsel, on cross-examination of Sandy, might ask questions regarding asserted sexual acts at the apartment, but that he should not conduct a "vague general fishing expedition." Defense counsel was permitted to cross-examine Margaret regarding asserted sexual acts; however, conjectural questions on cross-examination of Margaret and the mother, relating to the number of men who visited the apartment and to events which did not occur at the apartment, were excluded. Furthermore, the asserted defense was directed primarily at the competency of Patsy and Sandy to be witnesses and to tell the truth. The testimony of each girl tended to corroborate the testimony of the other girl. Defendant was not deprived of an opportunity to present the asserted defense that the girls' statements were based on fantasy. Defendant was not entitled, as he asserts, to an instruction regarding their statements being based on fantasy. He asserts that such an instruction should have been given because, according to his understanding, there was evidence that the girls had money for which they could not account without mentioning defendant as the source thereof, and the girls were left alone for long periods of time while the mother and Margaret were away from home on "dates" with men, and that men visited the apartment. The evidence did not warrant the giving of an instruction on such asserted defense.

 Appellant contends that the court erred in limiting his cross-examination of Sandy and Patsy. As transcript references, pertaining to this contention, he sets forth in his brief the numbers of approximately one hundred pages of the reporter's transcript and sets forth the numbers of certain

lines on those pages. He claims that at those places in the transcript the cross-examination was restricted unduly, but he does not state in what respects or manner the cross-examination was restricted. He makes general statements to the effect that the judge displayed animosity toward defense counsel and undue solicitude for Patsy and Sandy; Patsy and Sandy "had been well primed" as witnesses; they "were obviously appealing witnesses to the jury," whereas defendant's counsel appeared as "a kind of ogre" because of the court's attitude and conduct toward him; Patsy tended to "take cues from those who appeared to be her friends" and "to play a game with defense counsel, an enemy in her mind"; Patsy and Sandy were evasive unless "pinned down"; they did not understand that punishment would result from their failure to tell the truth; the judge assumed that they were telling the truth and that defense counsel was ignorant; and the judge on several occasions "took over" defendant's cross-examination of Patsy and Sandy. ▆▆ "The trial judge has a wide discretion in the control and ultimate scope of cross-examination of a witness." (*People* v. *Stone,* 239 Cal.App.2d 14, 20 ·[48 Cal.Rptr. 469]; see *People* v. *Carlson,* 73 Cal.App.2d 933, 942 [167 P.2d 812], re questions by judge after interrupting cross-examination of complaining witness in prosecution under section 288.) ▆▆ This contention of appellant is without merit.

▆▆ Appellant further contends that the court erred in denying him an opportunity to locate and subpoena a witness, namely, the person known as "Jack," with whom defendant allegedly had played pool. Appellant argues that the court should have granted his request that he be released from jail upon an amount of bail that he could furnish, or released upon his own recognizance, or that he should have been permitted to leave jail with a police officer to go to the bar and try to find Jack. He asserts further that he did not know Jack very well, but if defendant could have gone to "the place that Jack frequented there was good probability" that Jack might be located; that Jack could testify that he waited in defendant's car while defendant went into the apartment. He also argues that the court erred in refusing to grant a continuance of the trial so that defendant could subpoena Jack. Defendant was arraigned on August 24, 1965, and trial was set for October 14, 1965, on which date the trial was continued to November 22. 1965. Defendant did not know Jack's surname and did not know his address. The

amount of bail was reduced from $3,500 to $1,000. The record shows that defendant had "no ties in this community whatsoever"; and that the judge, in ruling on defendant's request to be released in order to look for Jack, reviewed an investigation report concerning defendant and said, "there is every chance he will disappear." This contention to the effect that the court erred in denying appellant an opportunity to locate a witness is without merit.

■ Appellant contends further that the court erred in not allowing him to present evidence that the prosecution suppressed evidence. At the trial defendant's counsel stated in effect that, during recess when he attempted to interview a prosecution witness in the hallway, the deputy district attorney would not let him talk to the witness, that the deputy told the witness that she did not have to talk to anybody, and further that the district attorney "put words in this woman's mouth." The judge then said: "As an officer of this Court, you are representing to me that you have some evidence that the District Attorney put words in this witness' mouth?" Defendant's counsel replied in the affirmative, and the judge excused the jury and said that he would hear such evidence. Defendant's counsel then said that he could not put on any evidence. The judge asked what evidence counsel had as to his statement accusing the district attorney of unethical conduct, and told him to put the evidence on. Counsel said that he could not do that. There was no evidence that the prosecution suppressed any evidence.

■ Another contention of appellant is that the court erred in denying his motion for an order declaring a mistrial. After the trial had proceeded for seven days, the judge became ill (December 6). The trial was resumed on December 13. Defendant made a motion for an order declaring a mistrial, by reason of the delay and interruption of the trial; and, as an alternative, he made a motion that the transcript of the girls' testimony be prepared. The motions were denied. There was no showing that a partial reporter's transcript had been made. Granting or denying a motion for an order declaring a mistrial is a matter within the trial judge's discretion (*People* v. *Grant,* 53 Cal.App.2d 286 [127 P.2d 567]).

■ Granting a continuance of a criminal trial, on the ground of illness, is discretionary. (*In re Ali,* 230 Cal.App.2d 585, 590 [41 Cal.Rptr. 108]; see *People* v. *Parker,* 235 Cal. App.2d 100, 103-104 [44 Cal.Rptr. 909]; *People* v. *Mitchell,*

209 Cal.App.2d 312, 320 [26 Cal.Rptr. 89].)　　　The court did not err in denying the motions.

　　Appellant also contends that the court erred in giving certain instructions to the jury. He refers to five instructions by page numbers in the clerk's transcript, and asserts that they related to alleged admissions by him, and that they should not have been given—because the only evidence as to his statements related to exculpatory statements.[1] The instructions were, in substance, general instructions on the subject of admissions. It is not asserted that the instructions included erroneous statements of law, but it is argued that the instructions were not applicable under the evidence. There is no reference to a confession in the instructions, and it was not claimed by the prosecution that he made a confession.　　An admission "is merely a recital of facts that 'tend to establish guilt.'" (*People* v. *Fitzgerald,* 56 Cal.2d 855, 861 [17 Cal.Rptr. 129, 366 P.2d 481].) It is a declaration which "'by itself, is not sufficient, even if true, to warrant an inference of guilt, but which tends to prove guilt when considered with the rest of the evidence.'" (*Id.*)

　　In the present case, defendant testified that he returned to the apartment that evening after he had left there earlier in the evening with Margaret. In rebuttal, an officer testified that, prior to the trial, the defendant had said to the officers that he did not return to the apartment that evening. It is true, of course, that defendant's statement to the officers (that he did not return), when considered by itself, was exculpatory; but when that statement is considered in connection with his testimony in court, that he did return, his first statement may be regarded as a prior inconsistent statement or admission having a material bearing as to his credibility. The court did not err in giving instructions relating to admissions.

　　Appellant asserts that the court erred in refusing to give the following instruction, requested by him: "Failure to make an outcry immediately after the alleged commission of the alleged act is a factor to be considered by you in connection with the question of the credibility of" Sandra and Patricia. He argues to the effect that if the girls had been molested it is likely that they would have made an outcry instead of going to sleep or watching television. There was no

---

[1]In his contention regarding the *Miranda-Escobedo* rule, *supra,* he regards his statements as admissions.

evidence as to whether they cried out. There was evidence that they ran from the bedroom when defendant allegedly committed the acts, and that the girls told their mother regarding the acts when she returned home. Refusal to instruct on a theory not supported by the evidence is not error. (*People* v. *Jones,* 184 Cal.App.2d 464, 469 [7 Cal.Rptr. 424].) ·

 Appellant asserts that the court erred in refusing to give his requested instruction which was as follows: "The court was in error when it told you that presumptions no longer will be evidence this coming January; all presumptions, including the presumption of innocence are evidence." The court gave the standard or usual instruction that a defendant is presumed to be innocent. The other part of the requested instruction, regarding law in the following January, was not of substantial significance. It was not error to refuse to give the instruction.

 Appellant argues that the court erred in refusing to give his requested instruction, as follows: "There is a presumption that higher evidence would be adverse from inferior being produced." It does not appear that the instruction was applicable under the evidence presented. The court did not err in refusing to give the instruction.

 Appellant contends that certain remarks of the judge, regarding appellant's counsel, Mr. Kanarek, constituted prejudicial misconduct. He refers to several remarks of the judge which reflected adversely upon counsel's ability and his manner of trying the case. Some of the remarks were: "Your tenacity is exceeded only by your stupidity." "But don't have the question dripping with the innuendoes that you insist upon putting there after I have warned you about the matter." "Well, don't preach to her." "You have stated it to the point of ad nauseam." "[Y]ou are not going to testify indirectly like you have just attempted to do." "The important thing now is whether or not you are going to be cited to the State Bar." (Jury not present when this last remark was made.) "You cannot be as stupid as you sound. No one can be that stupid." (Jury not present when this remark was made.) "[Y]ou are guilty of collossal rudeness." "I am doing my best to see that Mr. Bronson gets a fair trial in spite of you." "I have never seen such obviously stupid, ill-advised questions of a witness." (Jury not present when this remark was made.) "Are you paid by the word or by the hour that you consume the Court's time." (Verdict had been

returned before this remark was made.) "You are the most obstructionist man I have ever met." (Verdict had been returned before this remark was made.)

As above shown, five of the twelve remarks above-mentioned were made out of the presence of the jury. The remarks, so referred to above, which were made in the presence of the jury were: The first remark regarding "stupidity." The second, third, fourth, fifth, eighth, and ninth remarks—pertaining, respectively, to: "innuendoes"; "don't preach"; "ad nauseam"; not "to testify indirectly"; "rudeness"; "a fair trial in spite of you."

In determining appellant's contention regarding the remarks it is necessary, of course, to consider the circumstances under which the remarks were made. This opinion would be prolonged unduly if circumstances as to each remark were related in detail. It may be stated generally that counsel for defendant made many unnecessary objections to questions, engaged in unduly extended cross-examination, repeated questions (in substance) as to which objections had been sustained, and repeatedly made arguments after the court had made rulings and after the court had directed him not to argue after the rulings. Prior to the first remark abovementioned, and after counsel had been cross-examining an officer for an extended period of time and after the officer had answered counsel's question as to what was said regarding defendant's rights, defendant's counsel asked the officer to tell everything the defendant said after the officer had advised him. The judge said: "Sustain the objection. You have had an hour and 20 minutes of cross-examination concerning five questions. We are not going to wrap it all up with an officer telling us everything all over again. Do you have any specific questions to ask this witness concerning the subject matter of this trial?" Then counsel for defendant asked the officer what the defendant was wearing when he was interrogated. Thereupon, the first remark abovementioned was made. Later, when the jury was out of the courtroom, counsel for defendant asked the judge to declare a mistrial because that remark had been made. The judge said: "I warned you when this case started. I took you into chambers and in the record I said, 'Mr. Kanarek, your reputation has gone before you.' . . . I said to you, 'I am going to warn you now as to the way I am going to operate this trial,' and I said, 'The first time I am going to warn you. The second time I am going to warn you in front of your client. The third time I am going to warn you in front of the jury.' '' At another time, when the jury

was not present, the judge said: "All right, your reputation before you is just what I have stated, that you take interminable lengths of time in cross-examining on the most minute, unimportant details. You ramble back and forth with no chronology of events just to totally confuse everyone in the courtroom to the utter frustration of the jury, the witness and the judge." "It is the duty of a trial judge to see that the trial is conducted in a fair and orderly manner and to that end he may reprove counsel. . . ." (*People* v. *Stone*, *supra*, 239 Cal.App.2d 14, 22 [48 Cal.Rptr. 469].) In the present case, after the presentation of the evidence, the judge admonished the jury to disregard statements made between him and counsel. The judge said in part: "I want to take this opportunity to explain to you several things about this case that make it a little bit different than most cases in which you will ever sit as a juror. There has been from time to time some acrimony, some difference of opinion, sometimes loud words between the bench and either or both of the attorneys involved. Neither attorney in this matter is a defendant, nor are you to judge the truth of any statement made by a witness by the actions of either attorney. You are not to consider anything that they say to me nor any remark that I say to them—and I have made several. The defendant is entitled to be judged solely upon the evidence from the witness stand. . . ." Under the circumstances herein the remarks of the judge did not constitute a basis for reversing the judgment.

 Appellant further contends that the court erred in sentencing defendant. He argues that the judge lacked jurisdiction to sentence defendant because the court did not follow procedures prescribed by the Welfare and Institutions Code for treatment of mentally disordered sex offenders. In *People* v. *Succop*, 67 Cal.2d 785 [63 Cal.Rptr. 569, 433 P.2d 473], the People argued (as in the present case) that matters relating to proceedings under section 5500 et seq. of the Welfare and Institutions Code were moot upon an appeal from the judgment sentencing defendant to state prison. The court rejected that argument, and said that the trial court did not comply with several of the statutory requirements at the proceedings which resulted in defendant's temporary commitment—the court-appointed psychiatrists did not testify, defendant was not afforded any opportunity to produce evidence on his own behalf, the parties did not stipulate that the question be submitted on the reports of the psychiatrists, and

defendant made it clear that he desired a hearing. It was held that the procedure followed did not satisfy due process, and it was said (p. 790): ''The denial of an opportunity to be heard constituted a deprival of a substantial right and is not the type of error encompassed by section 13, article VI, of the California Constitution.'' In the present case, after the jury had found defendant guilty on both counts, proceedings were instituted alleging that he is a mentally disordered sex offender, reports were made by two physicians, a hearing[2] was had, the court examined the evidence, and defendant was found to be a probable mentally disordered sex offender, criminal proceedings were adjourned, and on January 25, 1966, the defendant was committed to a state hospital for observation for a period not to exceed 90 days. During that period, the hospital superintendent filed a report that defendant was a mentally disordered sex offender and was amenable to treatment. The judge found that defendant was a mentally disordered sex offender and on April 27, 1966, committed defendant to the Department of Mental Hygiene for confinement in the hospital for an indeterminate period. On August 9, 1966, the superintendent of the hospital certified (Welf. & Inst. Code, § 5517 subd. (b)) that defendant was not amenable to further treatment, that he was a danger to society, and that he be returned to court. Criminal proceedings were then reinstated, a supplementary probation report was ordered, the judge examined the reports, probation was denied, and defendant was sentenced to prison for the term prescribed by law on both counts. It thus appears that he was afforded a hearing which resulted in his temporary commitment. At the hearing, his motion that he be permitted to testify regarding the reports of the physicians was denied. No other evidence was offered by defendant, and no objection was made regarding the procedure at the hearing. Appellant's contention regarding the sex offender proceedings is without merit. The judge had jurisdiction to sentence the defendant. The People have made a motion to dismiss this last-mentioned appeal, in case Number 12191, on the grounds: (1) That the order committing him for observation and diagnosis is not appealable (see *People* v. *Succop*, 65 Cal.2d 483, 488 [55 Cal.Rptr. 397,

---

[2]At the hearing, defendant's motion ''that defendant testify respecting reports'' of the physician was denied. (No objection was made to the introduction of the reports in evidence.) Defendant also made a motion for a new trial, and in connection therewith, apparently. made motions to call the judge as a witness and to call the bailiff as a witness. Those motions were denied.

421 P.2d 405]; and (2) after taking the appeal from the order denying his motion for a new trial (which order is appealable under section 1237, subdivision 2 of the Penal Code), defendant appealed from the judgment of conviction (see section 1237, subdivision 2, of the Penal Code, which provides that "Such an appeal [from order denying motion for new trial] shall be dismissed if while it is pending an appeal is taken under subdivision 1 [appeal from judgment of conviction]"). The motion to dismiss appeal Number 12191 is granted. The order denying the motion for a new trial may be reviewed on the appeal, in case Number 13366, from the judgment of conviction.

At the oral argument on appeal, the appellant requested permission to augment the record by filing a certified copy of the complaint or affidavit of police officer, E. M. Eggleston, charging defendant with said crimes, and praying that an arrest warrant be issued. The request was denied. A few days after the two appeals herein were submitted, the appellant filed a document entitled, "Motion to File Supplementary Brief; Re-open Oral Argument; Augment Record; Points and Authorities; Declaration." and "Certified Copy of Affidavit of E. M. Eggleston, a Police Officer . . . on Behalf of Request for Warrant of Arrest for Appellant. . . ." The motion to file supplemental brief, re-open oral argument, and augment record by including the affidavit by the officer, is denied.

Affirmance of the judgment is an affirmance of the sentence.

The appeal in case Number 12191 is dismissed. The judgment in case Number 13366 is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied August 7, 1968, and appellant's petition for a hearing by the Supreme Court was denied September 5, 1968. Peters, J., was of the opinion that the petition should be granted.