[Crim. No. 14614. Second Dist., Div. One. Dec. 13, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED JONES, Defendant and Appellant.

Michael Korn, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE, J.—Defendant was charged with assault with intent to commit murder (§ 217, Pen. Code) and murder (§ 187, Pen. Code). A jury found him guilty of assaulting Jerry Spry by force likely to produce great bodily injury, a felony, a lesser but necessarily included offense than that charged in count I, and not guilty of the murder of Henry

Williams. He appeals from the judgment and order denying motion for new trial. The appeal from the order is dismissed.

Jerry Spry testified that around 7:30 p.m. on November 24, 1966 (Thanksgiving Day), he, Howard Lee and Larry Spells were walking down the street toward a liquor store at 42d and Ascot to get sodas; an automobile came up beside them and defendant got out of the car; he had never seen defendant before; defendant ran up to a porch of a house, returned and, with reference to the three of them, said, "Look at those three punks;" he told him he was not a punk, then continued walking toward the liquor store with the defendant behind him; Lorenzo Marshall was standing in front of the liquor store and he (Spry) started to converse with him when defendant grabbed him by the collar; defendant said nothing when he grabbed him but a scuffle ensued in which he (Spry) hit defendant and defendant stabbed him in the stomach; he was unaware he had been stabbed until Marshall said, "Someone is bleeding"; after he was stabbed he hit defendant with both fists; defendant stumbled a bit, ran to the corner and crossed the street; he saw no knife in defendant's possession; he (Spry) went home with a rag at the place of bleeding; Lee and Spells walked him home; he first went to the Central Receiving Hospital and then was taken by ambulance to General Hospital where he stayed for four days; the doctors took seven or eight stitches in his stomach.

Lee and Spells did not see a knife in anyone's hand; George Viltz saw defendant display a knife on occasions prior to and on November 25, 1966; and Jimmie Smith had seen a knife on defendant two or three times prior to November 25, 1966.

Lorenzo Marshall, called by the defense, testified that he saw Spry, Lee and Spells come out of the liquor store; Spry struck defendant first; and he saw no knife in defendant's hand. Defendant testified that he was confronted by Spry on 41st Place between Compton and Dorsey on November 24, 1966; Spry said of him, "Where is this punk going"; he tried to push Spry away from him outside the liquor store when Spry hit him first; Spry asked him if he wanted to fight and he replied no; he did not stab Spry and did not have a knife in his hand; he sustained injuries to his nose and lip as the result of Spry's blows.

 Appellant assails the testimony of the prosecution witness, Jerry Spry, as inherently improbable and urges error in the denial of his motion to strike Spry's testimony as

incompetent. Spry had testified on direct and cross-examination, then during redirect, because of confusion in some areas, lack of clarity in his responses and some difficulty in expressing himself, the judge interrupted the proceedings by stating that in his opinion Spry "has demonstrated that he is a hostile witness or he is incompetent . . . I prefer to rule that he is hostile, and I am going to allow . . . impeachment of this witness by . . . the party who has called him." To this defense counsel objected and moved to strike Spry's entire testimony on the ground that "he is not competent to testify." The judge denied the motion and commented, ". . . we have wasted two days with this man with the most unlikely and improbable testimony I have ever heard from any witness who has stated that he had finished 12th grade in high school" and "I am ruling that [he] is either incompetent or hostile, and I am opening the door to the prosecution to treat him as a hostile witness . . ."; after further colloquy, "I am saying that in my experience of over thirty years I have to rule that this witness' conduct is that of a hostile witness." The prosecutor then asked defense counsel, "Do you want a psychiatrist appointed" to which the latter replied, "I have no objection" suggesting Dr. A. R. Tweed. There was some suspicion that Spry had been drinking and the court said: "I would like to have him examined right now. I don't know but what he is under the effect right now. . . . Well, I want him taken right now while he is in the same condition that he is; so that there can be some determination as to whether it is narcotics or what it is." Thus, under section 730, Evidence Code, Dr. Tweed was appointed to examine Spry as to his "mental condition"; Spry was taken to the doctor's office for the examination and the proceedings were continued to the following Monday morning. While the report of Dr. Tweed is not before us and thereafter no mention was made by either counsel or the judge concerning Spry's lack of competence as a witness or of the doctor's findings (from the judge's comment at the time of the motion for new trial it appears that Spry is "a mental defective") it is obvious from the extensive redirect and recross-examination of Spry on the following Monday that Spry was competent to testify.

It is true that Spry was confused in several areas and that some conflict exists in his version of the events, but read in its entirety, Spry's testimony is basically clear and credible—he simply said that defendant called him a name, followed him

and then hit him starting a fight during which he stabbed him in the stomach. .

■ The rule is stated in *People* v. *Huston,* 21 Cal.2d 690 · at page 693 [134 P.2d 758] : ''Although an appellate court will not uphold a judgment or verdict based upon evidence inherently improbable, testimony which merely discloses unusual circumstances does not come within that category. (*Kidroski* v. *Anderson* [1940] 39 Cal.App.2d 602, 605 [103 P.2d 1000].) ■ To warrant the rejection of the statements given by a witness who has been believed by a trial court, there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions. [Citations.] Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts upon which a determination depends. (*Hicks* v. *Ocean Shore Railroad, Inc.,* 18 Cal.2d 773, 781 [117 P.2d 850].)'' (*People* v. *Lyons,* 47 Cal.2d 311, 319-320 [303 P.2d 329] ; *People* v. *Jenkins,* 231 Cal.App.2d 928, 931 [42 Cal.Rptr. 373].)

■ Whatever conflicts or inconsistencies exist in Spry's testimony were for the jury to consider in determining Spry's credibility and the weight to be given his testimony, but they are not such as to render Spry's testimony inherently improbable. The statements given by Spry are neither false on their face nor therein does there exist a physical impossibility that they are true. The main issue of fact upon which the testimony of the parties conflicts is whether defendant stabbed Spry and who started the fight. If Spry was not telling the truth the only possible alternative hypothesis is that while he and defendant were scuffling (a fact undisputed) someone else stabbed Spry in the stomach; under the uncontroverted circumstances this appears to be highly unlikely. There is nothing physically impossible or inherently improbable in the theory based on Spry's testimony and adopted by the jury that defendant, a bully, called Spry, who is a ''mental defective,'' a name, taunted him. followed him to the liquor store and grabbed him by the collar starting a scuffle in which he stabbed Spry. Unlike the testimony of the prosecutrix in a kidnapping charge in *People* v. *Carvalho,* 112 Cal. App.2d 482 [246 P.2d 950], cited by appellant, there is nothing ''fantastic'' or ''more than unusual'' or that does ''violence to reason'' about Spry's testimony. (P. 489.)

The motion to strike Spry's testimony on the ground that he was an incompetent witness was made prior to Spry's examination by Dr. Tweed; the same was denied, and properly so. It is noted that after the examination and during subsequent extended redirect and recross-examination no one, including defense counsel, even suggested that Spry might be incompetent as a witness. While Spry may be "a mental defective" the burden is upon appellant to show that he was incompetent to testify; he has not sustained his burden nor does the record of the law[1] support his claim.

■ Appellant contends that the judge erroneously restricted his cross-examination of George Viltz. He says that Viltz gave highly damaging evidence tending to show him "as a knife wielder" who used a knife on Spry; the judge erroneously believed his attempt to impeach Viltz was on a "collateral issue" upon which he could not be impeached; and Viltz' motive in testifying was crucial, the evidence being susceptible of showing Viltz to be the murderer.

Defendant was also charged with the murder of Henry Williams of which he was acquitted. The testimony of Viltz was directed to that charge; he said he saw defendant display a knife on occasions prior to and on November 25, 1966 (the day of Williams' murder). Based upon his interpretation of the evidence that Viltz did not observe the homicide and was not present at the altercation in which Williams was stabbed in the heart, the trial judge ruled that the question defense counsel wished to ask Viltz, whether he had made a statement that Williams was running around with his wife and that he was going to do something about it, related to a collateral issue. A trial judge must of necessity consider the evidence in ruling on questions of law thus there is no merit to the complaint that in making his ruling, he improperly assumed that the homicide took place at a particular time and place. The trial judge has a wide discretion in the control and ultimate scope of examination of the witnesses, especially where the purpose is to show bias, and although liberality and wide latitude is the usual standard, we see no abuse of discretion

---

[1]Section 700, Evidence Code: "*General rule as to competency*
"Except as otherwise provided by statute, every person is qualified to be a witness and no person is disqualified to testify to any matter."
Section 701, Evidence Code: "Disqualification of witness
"A person is disqualified to be a witness if he is: (a) Incapable of expressing himself concerning the matter so as to be understood, either directly or through interpretation by one who can understand him; or (b) Incapable of understanding the duty of a witness to tell the truth."

here. (*People* v. *Stone*, 239 Cal.App.2d 14, 20 [48 Cal.Rptr. 469]; *People* v. *Bronson*, 263 Cal.App.2d 831, 840 [70 Cal. Rptr. 162].) Moreover, there was no prejudice to defendant; he was acquitted of the murder to which Viltz' testimony was directed, and on the assault charge, the testimony that Viltz had seen him with a knife on occasions prior to November 25, 1966, was cumulative. Jimmie Smith testified that she saw a knife on defendant two or three times prior to November 25, 1966, and Spry testified that during the altercation on November 24 defendant stabbed him.

Appellant's last claim that there was misconduct on the part of the trial judge predicated on the unfounded claim "of unjustifiable criticism of defendant's counsel," his expression of opinion that certain witnesses were not to be believed, his discussion with counsel concerning an appeal "being taken," and his unnecessary interruption of the interrogation of the witnesses and assumption of the role of prosecutor in participating therein, is without merit.

The record shows that at the start of the trial defense counsel was late because of matters he had to attend to in another court; the criticism was leveled at a fellow judge for the manner in which he presided in his courtroom. However unfortunate the judge's criticism of his colleague, it reasonably could not be construed as directed to defense counsel. Appellant's further assertion that the judge criticized his counsel for not properly representing him is simply not true. On the redirect-examination of Spry the judge faulted counsel for failing to object when Spry "doesn't make clear what he is talking about," because "we are not getting an adequate record." It was defense counsel who first brought up the subject of representation by saying in response, "I feel that he [defendant] is getting an adequate defense"; the judge replied that "he may be getting an adequate defense by your remaining silent, but I am not tolerating this kind of record." The controversy related strictly to the clarity of the record.

The trial judge did not, through his questioning of certain witnesses. intimate that they were not to be believed. Actually he seemed to be dissatisfied with the manner in which all of the witnesses, prosecution and defense alike, testified. For this there was good cause—there appears to have been a reluctance on the part of some. apparently friends of defendant, to testify concerning who started the altercation and who stabbed Spry, and an unusual alacrity on the part of others to

testify on defendant's behalf. The record shows some difficulty on the part of both counsel in getting their witnesses to speak up, obtaining responsive answers, and avoiding confusion in various areas; and the judge's criticism reflected nothing more. The only witness he seemed at any time to doubt was Spry, the prosecution witness, and this occurred prior to Spry's examination. Whatever the jury at the time might have inferred from the judge's statements, was dispelled by the subsequent instruction that the jurors are the sole and exclusive judges of the credibility of witnesses. Before Spry was examined by Dr. Tweed, his answers to some of the questions were not clear; the judge was concerned about the record and sought to have both counsel clarify Spry's testimony to the end that the "record for whatever purpose" be clear. The mention of appeal resulted in the judge's impatience with Spry, "Mr. Spry do you understand that if there should be an appeal of this matter, someone will have to look at this record?" It is unclear to us why under the circumstances the judge thought Spry would understand such a question, but the remainder of the colloquy between him and defense counsel makes it clear that his concern was for a proper record for the evaluation of the jury, appeal or "for whatever purpose." Certainly the comment does not imply that the jury should find defendant guilty.

Appellant does not claim that the judge's questions of the witnesses were improper per se or implied belief in his guilt but argues that his "voluntary assistance" improperly gave weight to the People's case. The judge's interruptions occurred during examination of all witnesses; in every instance to which our attention has been directed, he sought to clarify their testimony or bring out additional facts. His questions of defendant's witnesses bearing on a defense could well have been used to defendant's advantage. ■ "In the exercise of his broad powers to control the proceedings, the trial judge has a right and duty to expedite the trial and, if necessary in the interests of fairness and efficiency, to participate therein. (*People* v. *Martinez,* 38 Cal.2d 556, 564 [241 P.2d 224].) " (*People* v. *Wrigley,* 69 Cal.2d 149, 164 [70 Cal.Rptr. 116, 443 P.2d 580].) The situation is unlike that set up in *People* v. *Robinson,* 179 Cal.App.2d 624, 633 [4 Cal. Rptr. 50], cited by appellant.

The jury simply disbelieved the prosecution's witnesses relative to the murder of Henry Williams and acquitted defendant thereof; it gave credence to Spry's testimony and

convicted defendant of the assault. The entire record reflects a full and fair trial on all of the issues and excellent representation by the public defender who represented defendant. The judgment is affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 7, 1969, and appellant's petition for a hearing by the Supreme Court was denied February 5, 1969.